UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

         Plaintiff(s),

v.

PENGILLY ROBBINS SLATER LAW
FIRM, et al.,

         Defendant(s).

2:13-CV-1121 JCM (CWH)

**ORDER**

Presently before the court is defendants' motion to dismiss. (Doc. # 14). Plaintiff has filed a response (doc. # 18) and defendants have filed a reply (doc. # 21).

**I.    Background**

This matter arises in connection with a $120,000 retainer paid by non-party Peek Construction Company ("Peek") to the defendant law firm, Pengilly, Robbins, Slater ("PRS"). Plaintiff Travelers Casualty and Surety Company of America ("Travelers") alleges that PRS colluded with Peek in order to illegally deprive Travelers of its alleged security interest in the $120,000.

On or about November 27, 2006, Travelers executed a general indemnity agreement with non-party Williams Brothers, Inc. ("Williams"). On or about April 15, 2009, Travelers executed another general indemnity agreement with non-party El Camino Construction Company. On or about March 29, 2010, Peek became the successor to El Camino and agreed to be bound by the April

**James C. Mahan**
**U.S. District Judge**

15, 2009, indemnity agreement.

Those agreements provided that, in the event of default, Peek and Williams conveyed all rights, title, and interest in property used as collateral to Travelers. "Property" was defined to include all current and after-acquired sums due then or thereafter, and all equipment, tools, materials, supplies, inventory, and vehicles. Travelers alleges it perfected this interest on or about September 26, 2011, when it filed a UCC-1 financing statement with the Nevada Secretary of State.

Sometime in 2011, Peek and Williams allegedly defaulted under the terms of the indemnity agreement. Peek thereafter began liquidating the alleged collateral construction equipment through sales to various third parties.

Travelers initiated suit regarding the alleged breach of indemnity agreement in a separate case in this district, *Travelers Casualty and Surety Company of America v. Peek Construction Company, et al.*, 2:12-cv-00058-LDG-NJK. In that case, Peek retained PRS as counsel and issued a check in the amount of $120,000 as a retainer. That litigation is currently ongoing. Travelers alleges in the instant suit that the retainer was issued using proceeds obtained from liquidating the collateral. Travelers further alleges that Peek had no right to liquidate said collateral, that PRS was aware that Peek was liquidating equipment subject to Travelers' security interest, and that PRS was aware Travelers had the right to the proceeds from the sale of said equipment. Travelers alleges Peek and Williams carried out these sales based on the advice of PRS and, in particular, defendant James Pengilly, Esq.

Based on these allegations, Travelers contends it is entitled to the $120,000 payment. In response, PRS asserts that it simply gave legal advice to Peek instructing it that Travelers' interest was not perfected and Peek was within its rights to liquidate the equipment.

The amended complaint contains causes of action for (1) conversion; (2) fraudulent transfer; (3) tortious impairment of security interest; (4) tortious interference with contract; (5) claim and delivery; (6) aiding and abetting; (7) unjust enrichment; and (8) constructive trust. The defendant has filed the instant motion seeking to dismiss all causes of action for failure to state a claim.

. . .

**James C. Mahan**
**U.S. District Judge**

## II. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

## III. Discussion

"A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." NRS 104.9332(2). Each of Traveler's claims are predicated on an alleged security interest in the $120,000. Thus, it must be demonstrated that PRS colluded with Peek in an effort to

**James C. Mahan**
**U.S. District Judge**

- 3 -

deprive Travelers' of its rights to those funds. Otherwise each claim fails. In order to prove collusion, Travelers would necessarily need to discover the content of certain communications between Peek and PRS.

"Nevada recognizes the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged." *Fink v. Oshins*, 49 P.3d 640, 643 (Nev. 2002). "The policy behind the absolute privilege, as it applies to attorneys participating in judicial proceedings, is to grant them 'as officers of the court the utmost freedom in their efforts to obtain justice for their clients.'" *Id.* at 433 (*quoting Bull v. McCuskey*, 615 P.2d 967, 961 (Nev. 1980), *abrogated on other grounds by Ace Truck v. Kahn*, 746 P.2d 132 (Nev. 1987)). "[I]t is in the public interest that attorneys speak freely with their clients, even if attorneys occasionally abuse the privilege." *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232, 1236 (9th Cir. 2009). "An absolute privilege is an immunity, which protects against even the threat that a court or jury will inquire into a communication." *Hampe v. Foote*, 47 P.3d 438, 440 (Nev. 2002).

"Nevada has applied the absolute privilege related to judicial proceedings primarily in defamation actions, but has extended its application to other causes of action which derivatively depend upon the alleged defamation." *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F.Supp.2d 1184, 1195 (D. Nev. July 20, 2006) (*citing Fink,* 49 P.3d at 643 (defamation); *Knox v. Dick,* 99 Nev. 514, 665 P.2d 267 (1983) (defamation and intentional infliction of emotional distress); *Sahara Gaming Corp. v. Culinary Workers Union Local 226,* 115 Nev. 212, 984 P.2d 164 (1999) (civil conspiracy, interference with contract, and interference with prospective economic damage which were derivative of defamation claim)).

The Nevada Supreme Court has applied the privilege to communications even if they were known to be false or made with malicious intent. *Clark County Sch. Dist. v. Virtual Educ.*, 213 P.3d 496, 502 (Nev. 2009).

Relying on Nevada's state court decisions, Nevada's federal courts have expanded the privilege to cover intentional torts that are not derivative of a defamation claim. *See, e.g., Crockett,*

James C. Mahan
U.S. District Judge

- 4 -

1  440 F.Supp.2d 1184.  The Ninth Circuit has affirmed this approach.  *See, e.g., Crockett*, 583 F.3d 1232 (affirming district court's application of absolute privilege to bar claims for breach of implied covenant of good faith and fair dealing and breach of fiduciary duties).

The Nevada Supreme Court has more recently applied the privilege to bar claims against a law firm for abuse of process, slander of title, and intentional interference with prospective advantage.  *Bullivant, Houser, Bailey PC v. Eighth Judicial District Court of Nevada, et al,* 2012 WL 1117467 (Nev. March 30, 2012).  That court rejected the argument that the privilege was limited only to communications giving rise to defamation claims.  Instead, it applied the privilege to encompass not only *communications* relating to those intentional torts not sounding in defamation, but also to *conduct* based on those communications.  *Id.* at *3 (applying privilege to advice by attorney as well as attorney's act of filing lawsuit and recording numerous *lis pendens*, allegedly filed for improper purposes).  Although an unpublished decision, *Bullivant* further illustrates the Nevada Supreme Court's expansive application of Nevada's absolute litigation privilege to protect attorneys advising their clients in the course of ongoing litigation from an increasing variety of intentional torts.

Although it does not appear the Nevada Supreme Court has decided an identical scenario, it has instructed that "courts should apply the absolute privilege liberally, resolving any doubt in favor of its relevancy or pertinency." *Fink*, 49 P.3d at 644 (Nev. 2002); *see also Virtual Educ.*, 213 P.3d at 502 (when "determining whether the privilege applies [we] resolve any doubt in favor of a broad application.").

The majority of PRS's alleged wrongdoing consists of communications and/or conduct by PRS in its capacity as legal counsel for Peek.  Because these communications were made during the course of litigation, they are absolutely privileged.  *Crockett & Myers, Ltd.*, 583 F.3d at 1236.  As a matter of law, they therefore cannot constitute the basis of Travelers' claims against PRS.  *See Bullivant*, 2012 WL 1117467 at *3.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 5 -

## IV. Conclusion

In light of the principles underlying Nevada's absolute litigation privilege and the cases interpreting and applying that privilege, the court finds it applies to bar the instant claims. Defendants' motion to dismiss is granted.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss (doc. # 14) be, and the same hereby is, GRANTED. The clerk shall enter judgment accordingly and close the case.

DATED March 25, 2014.

_____
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 6 -